IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| AMERICAN CUSTOM CONTRACTORS, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 23-cv-2335-BAH |
| BROTERHOOD MUTUAL INSURANCE COMPANY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff American Custom Contractors, Inc., ("Plaintiff") brought suit against Brotherhood Mutual Insurance Company ("Defendant") in the Circuit Court for Montgomery County alleging the breach of an insurance contract. ECF 1, at 4. Defendant removed the matter to this Court alleging diversity jurisdiction under 28 U.S.C. § 1332(a)(1). *Id.* at 2. Pending before the Court is Defendant's Motion to Dismiss (the "Motion."). ECF 12. Plaintiff filed an opposition, ECF 13, and Defendant filed a reply, ECF 14. All filings include memoranda of law and the Motion includes exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendant's Motion is **GRANTED**.

**I.    BACKGROUND**

This case stems from the denial of an insurance claim for losses incurred during a severe storm in 2020. ECF 1-1, at 3. Defendant is an insurance company that provides "homeowner and

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

commercial insurance services." *Id.* at 2–3. Defendant issued Policy No. 451307 ("the Policy") to Hughes United Methodist Church in Wheaton, Maryland ("the Church"). *Id.* at 2. "On or about June 25th, 2020," and during the period of coverage, Plaintiff alleges that a "severe thunderstorm wind and hail event resulted in significant damage"[2] to property belonging to the Church and covered under the Policy. *Id.* at 3. After the storm, the Church assigned the Policy to Plaintiff, a contractor company, who alleges it "promptly reported the loss to the Defendant and fully complied with all applicable conditions of the [] policy." *Id.* "Despite [] Plaintiff's compliance with all policy conditions and the compelling evidence of covered loss," Plaintiff alleges that "Defendant has failed to honor its contractual obligations to pay the benefits due under the [P]olicy." *Id.* at 3–4. Plaintiff filed suit alleging a breach of the Policy and demanding an "appraisal of the loss and damage suffered due to the storm event." *Id.*

Defendant moves to dismiss the lawsuit on two grounds. First, Defendant argues that the policy includes an express prohibition on assignment without Defendant's written consent. ECF 12, at 3. Since Defendant did not so consent, the assignment from the Church to Plaintiff "provides no rights to [Plaintiff] and [Plaintiff] cannot bring an action on the Policy." *Id.* In the alternative, Defendant argues that even if the assignment is valid, its express terms require that Plaintiff must be owed payment for services provided to the Church as a condition precedent to any assignment. *Id.* Since Plaintiff provided no such services to the Church and thus is not owed any payment, Defendant alleges that "there is nothing to assign that can be recovered from [Defendant]." *Id.* at 3–4.

---

[2] Plaintiff alleges that "[a] comprehensive engineering investigation conducted by AQA Forensic Engineers confirmed the storm-induced damages to the [Church's property], concluding that several parts of the [Church's property], including the slate tile roof coverings, windows, doors, and interior building material(s), were affected and required repair and/or replacement." ECF 1-1, at 3.

Plaintiff counters that "Maryland courts have long upheld the principle that once a loss occurs, an insured's claim under a policy becomes a vested right that can be assigned without the insurer's consent." ECF 13, at 3. Since the policy "does not explicitly prohibit post-loss assignments," and because the assignment was "made after the loss," Plaintiff argues that any "prohibition on assignment without consent does not apply." *Id.* at 4. As to the argument that Plaintiff suffered no loss and thus has no policy to enforce, Plaintiff alleges that it would be "premature and inappropriate" to make such a determination at this early stage of the case. *Id.* at 4. "In any event," Plaintiff also notes, "that no services have been provided by [Plaintiff] is irrelevant to the legal right of [Plaintiff] to recover under the assignment" since all that matters is Plaintiff's "entitlement to recover losses suffered by the assignor." *Id.* at 5.

Defendant replies by noting that where, as here, the insurance contract explicitly prohibits assignment of the contract without the consent of the insurer, the distinction between pre and post-loss assignment is immaterial. ECF 14, at 1–2. As to Plaintiff's allegation that issues of loss must be reserved for summary judgment or trial, Defendant notes that because "Plaintiff has not even alleged the facts that reflect any entitlement to implement the assignment," dismissal is the appropriate remedy. *Id.* at 2. "Indeed," Defendant argues, "the failure to allege the facts in the Complaint, or offer even a hint of what those facts might be . . . , confirms that there have been no such services rendered or the conditions fulfilled." *Id.* at 3.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and

considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

In evaluating a motion to dismiss, "the Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference." *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 450 (D. Md. 2019) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)); *see also Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("We may consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.") (citations omitted). "To be incorporated by reference, the complaint must make 'a clear, definite and substantial reference to the documents.'" *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 123 (S.D.N.Y. 2010) (quoting *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 330–31 (S.D.N.Y.2003)).

Here, the Court considers the policy that was attached to the Motion, *see* ECF 12-1, at 1-86, as it was explicitly referenced in Plaintiff's complaint by number, is essential to Plaintiff's case, and its authenticity is not challenged. *See* ECF 1-1, at 2 (referencing Policy No. 451307). For the same reasons, the Court also considers the documentation memorializing the assignment of the policy to Plaintiff. *See* ECF 12-2, at 1.

## III. ANALYSIS

Under Maryland law, which governs this dispute,[3] "[a]n insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (1985). Here, the contract between the Church and Defendant could not be clearer: the policy "may not be assigned without [Defendant's] written consent." ECF 12-1, at 7. Defendant cites to *Dwayne Clay, M.D., P.C. v. Government Employees Insurance Co.*, for the proposition that prohibition of the assignment of insurance benefits does not violate public policy. ECF 12, at 2 (citing 739 A.2d 5, 12 (1999)). Thus, Defendant argues, since no regulation or statute forbids the non-assignment provision of the Policy, the Court is compelled to enforce it. *Id.*

In *Clay*, "a personal automobile liability insurer," the defendant, "in reliance on a nonassignability clause in [an auto-insurance] policy, refused to recognize a post-accident assignment, by the injured insured to a health care provider," the plaintiff, "of benefits payable

---

[3] "A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013). For contract claims, "Maryland applies the law of the state in which the contract was formed . . . unless the parties to the contract agreed to be bound by the law of another state." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 961 (D. Md. 2019). Here, both parties have applied Maryland law in making their arguments, and the Court will do the same throughout this opinion. *Bank of La. v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 443 (D. Md. 2020) ("Courts applying Maryland's choice of law rules only use Maryland law to evaluate substantive law claims as a default when both parties only cite Maryland law in their briefing.") (citation omitted).

under the policy's uninsured motorist coverage in an amount equal to the provider's charges for health care rendered as a result of the accident." 739 A.2d at 6. The health care provider argued that it violated public policy to enforce such agreements "against [those] who treat[] the insured" because the result would be that injured motorists who cannot afford care "will not receive necessary medical treatment unless they are allowed to assign the benefits available under their automobile insurance policy." *Id.* at 8. The insurer countered that any policy argument was solidly on its side since "the nonassignability clause neither eliminates nor reduces the uninsured motorist benefits" and because a holding that invalidated such clauses might not be limited to health care providers and thus could result in a scenario where "all of the benefits payable to [an] insured could be exhausted by assignments to other creditors." *Id.* After surveying relevant precedent and history of uninsured motorist coverage in the state, Maryland's highest court held that "[t]he reasons advanced by Clay are too nebulous to permit a judicial declaration that the clause is unenforceable on public policy grounds." *Id.* at 12.

Defendant also points the Court to *Michaelson v. Sokolove*, 182 A. 458 (1936). There, the defendant was the beneficiary of a life insurance policy who assigned her rights to the plaintiff despite a provision in the policy forbidding such transfers. *Id.* at 459. After the defendant refused to honor the assignment and the plaintiff sued, the Maryland Supreme Court upheld the anti-assignment provision. *Id.* at 459–60.

Given the seemingly unambiguous statement that nonassignability clauses are enforceable in Maryland, Defendant contends that, under *Clay* and *Michaelson*, this case is fairly cut and dried. However, *Clay*'s holding was not as broad as Defendant wants it to be. Indeed, the *Clay* court explicitly noted that no party raised, as Plaintiff does here, the legality of a nonassignability clause to assignments occurring *after* a loss accrues. 739 A.2d at 8 ("Clay has not argued that, even if

the nonassignability clause is valid and enforceable, operation of the clause, as drafted, would not reach a post-accident assignment of [the assignor's] anticipated uninsured motorist benefits."). In fact, the *Clay* court was careful to limit the scope of its holding to "whether the nonassignability clause is unenforceable on public policy grounds when applied to an assignment of uninsured motorist benefits to a health care provider under the circumstances here." *Id.* Similarly, the *Michaelson* court faced a different set of circumstances than are present here and focused primarily on the public policy arguments for and against a survivor's assignment of a life insurance policy and on specific language in the contract that is not present in the policy at issue here. 182 A. at 459–60. Plus, as in *Clay*, it does not appear that the timing of the assignment was ever raised as an issue or analyzed by the court, even though the assignment undoubtedly occurred after the defendant had lost her husband (and the life insurance policy at issue came due). *Id.* at 459.

Seizing on the fact that *Clay* explicitly did not address post-loss assignments, Defendants cite to several older Maryland cases as support for the proposition that once a loss occurs, an "insured's claim under a policy becomes a vested right that can be assigned without the insurer's consent." ECF 13, at 3–4 (citing *Michigan Fire & Marine Ins. Co. v. Genie Craft Corp.*, 183 F. Supp. 533, 537 (D. Md. 1960); *Washington Fire Ins. Co. of Baltimore v. Kelly*, 32 Md. 421, 437 (1870); and *Whiting v. Independent Mut. Ins. Co.*, 15 Md. 297, 298 (1860)). Unfortunately for Plaintiff, a far more recent case from Maryland's intermediate appellate court confirms that the distinction between pre-loss and post-loss assignment is immaterial when a provision in the contract explicitly prohibits such assignments.[4] *See Matter of Featherfall Restoration LLC*, 311

---

[4] It is through no fault of the parties that this more recent case was not included in their briefing as the opinion was not issued until March 7, 2024, after all briefs were due.

A.3d 437 (2024), *cert. granted*, No. 67, SEPT. TERM, 2024, 2024 WL 3330317 (Md. June 17, 2024).

In *Matter of Featherfall Restoration LLC*, the Appellate Court of Maryland wrestled with the exact question presented here: whether, "under Maryland law, anti-assignment clauses in insurance policies are valid, including when a purported assignment of a claim arises after the occurrence of a loss." *Id.* at 440. There, "insured homeowners filed a claim with [with their insurance company], believing that damage to the[ir] home's roof was the result of a storm and was thus covered under their home insurance policy." *Id.* "Simultaneously," the insured "contracted with Featherfall Restoration LLC ('Featherfall') for any work that would be needed to fix the roof" and assigned to Featherfall the "rights related to the claim" under the insureds' policy. *Id.* After a denial of the claim led to Featherfall raising the assignment issue, the insurer "refused to recognize the assignment, relying on an anti-assignment clause in the insurance policy that voided any assignment of the policy made without [the insurer's] written consent." *Id.* Featherfall challenged the denial in a complaint to the Maryland Insurance Administration, and the Maryland Insurance Commissioner ultimately "concluded that, based upon the Maryland Supreme Court's rationale in *Clay*, [the insurance policy's] anti-assignment clause also prohibited post-loss assignments and remained enforceable." *Id.* at 446 (citing 739 A.2d Md. at 5). After that decision was upheld by the Circuit Court for Baltimore City, Featherfall sought appellate review. *Id.* at 447.

In a thorough and cogent opinion, Judge Getty started by affirming that "Maryland does not follow the rule . . . that an insurance policy is to be construed most strongly against the insurer." *Id.* at 451 (citing *Cheney v. Bell National Life Insurance Co.*, 556 A.2d 1135, 1138 (1989)). "Rather, following the rule applicable to the construction of contracts generally, [the Maryland

8

Supreme Court has] h[e]ld that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Id.* Accordingly, "effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Id.* at 451–52 (quoting *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964)). Judge Getty continued by analyzing several of the cases cited by the parties here, including *Washington Fire Insurance*, *Whiting, Sokolove,* and *Clay*, before concluding that "[a]lthough Maryland's early precedent seems to distinguish the effect of such clauses depending upon whether the assignment is pre- or post-loss, it is clear that our modern precedent does not make such a distinction." *Id.* at 451–55.

In coming to this conclusion, the *Featherfall* court noted that the "19th century cases . . . predate the modern statutory and regulatory scheme for insurance," and acknowledged that modern Maryland health insurance law expressly requires "health insurers to recognize such [post-loss] assignments." *Id.* at 455 (citing Md. Code. Ins. §§ 14-205.3(b) and 15-138(c)(1)). "[T]he General Assembly," the opinion notes, "would not have needed to pass legislation requiring health insurance providers to recognize post-loss assignments if such assignments were already valid under the common law." *Id.* at 456 (citing *Gleaton v. State*, 235 Md. 271, 277, 201 A.2d 353, 356 (1964)). Moreover, "[t]he General Assembly has not created a similar prohibition on anti-assignment clauses for property insurance companies, from which we can infer that the Legislature declined to create such a prohibition." *Id.* at 455.

The *Featherfall* Court addressed two remaining arguments that, though not raised here, are relevant nonetheless:[5] 1) Section 322 of the Restatement (Second) of Contracts takes the position

---

[5] The *Featherfall* Court also addressed issues that are not relevant to the case at bar including the plaintiff's standing to bring the suit, *Featherfall*, 311 A.3d at 458–59, and allegations that the insurer violated provisions of the Maryland Insurance Article by engaging in unfair claim

that "post-loss assignments are valid despite anti-assignment clauses," *id.* at 456; and 2) an anti-assignment provision might prevent the assignment of an entire policy but does not prohibit the assignment of a single claim under that policy, *id.* at 457–58.  As to the first argument, the *Featherfall* Court acknowledged that "the Restatement serves as an interesting juxtaposition to Maryland law on assignments," but confirmed that "[t]he Maryland Supreme Court has not expressly adopted Section 322 of the Restatement (Second)." *Id.* at 456.  As to the whole policy/claim argument,[6] "such a reading would allow insured parties to assign as many of their rights under [their policy] as they desire so long as such assignment does not transfer the whole of the [p]olicy, or would allow piecemeal assignment of the whole [p]olicy, all without [the insurer's] consent." *Id.* at 457–58.  Such an outcome, the court noted, "would make the anti-assignment clause meaningless." *Id.* at 458.  As such, the Court held that an "anti-assignment clause should not be read to allow assignment of any rights under the [p]olicy so long as it does not amount to an assignment of the entire [p]olicy." *Id.* at 457.

After *Featherfall*, it is now undeniably clear "that Maryland enforces anti-assignment clauses and that such clauses prohibit assignments regardless of whether they were made before or after a loss under an insurance policy." *Id.* at 461.  Here, no party disputes that the Policy was issued by Defendant to the Church, ECF 1-1, at 1; ECF 12-1, at 1, or that a claim under that policy

---

settlement practices, *id.* at 460–61.  The Court also concluded that the Insurance Commissioner did not err in failing to uphold the assignment under the so-called "catch all" provision for "determining illegal trade practices not enumerated in statute." *Id.* (citing Md. Code Ins. § 27-104(a)).

[6] The Policy prohibits its assignment without consent but does not specifically address the assignment of individual claims.  ECF 12-1, at 7.  Further, the assignment at issue here is of a specific claim, not the entire Policy.  ECF 12-2, at 1 (noting the assignment of "claim # 0610429" not "Policy # 451307").  Regardless, Plaintiff does not raise the distinction as a basis for denying the Motion and, in any event, the *Featherfall* Court soundly rejected the argument.  311 A.3d at 457–58.

was then assigned to Plaintiff without Defendant's consent, ECF 12-2, at 1; ECF 1-1, at 2 (referring to Plaintiff as "the assignee of the claims" of that policy).  As such, in the face of an enforceable insurance contract expressly forbidding the assignment of the policy without the written consent of the insurer,[7] the Court cannot endorse Plaintiff's argument that the timing of the assignment somehow renders that assignment lawful in the absence of the written consent of the insurer.  ECF 13, at 34.  Plaintiff's claim must be dismissed.  Since Defendant's first argument is dispositive of the Motion, the Court need not reach the second.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 12, is **GRANTED**. Plaintiff's complaint is **DISMISSED** without prejudice.

A separate implementing Order will issue.

Dated: August 7, 2024

/s/
Brendan A. Hurson
United States District Judge

---

[7] Plaintiff notes that the Policy does not "distinguish between the assignability of policy rights before and after a loss has occurred." ECF 13, at 4. Since "Plaintiff's assignment was made after the loss," Plaintiff argues, "the prohibition on assignment without consent does not apply." *Id.* "[W]hen interpreting a contract's terms," this Court's "primary consideration is the 'customary, ordinary, and accepted meaning' of the language used." *Fister ex rel. Est. of Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 199 (2001) (citations omitted). The policy here expressly notes that it "may not be assigned without [the insurer's] written consent." ECF 12-1, at 7. While true that the policy is silent as to the timing of any assignment, no such clarification is needed since the plain language of the contract forbids *any* non-consensual assignment of the policy at *any* time.